Argued and submitted April 8, reversed and remanded June 12, 1996

In the Matter of
the Monetary Adjustment between the
SAIF Corporation, Insurer, and Liberty
Northwest Insurance Corporation, Insurer,
Lynette Barnes, Claimant.

LIBERTY NORTHWEST INSURANCE CORPORATION,
*Petitioner,*

*v.*

SAIF CORPORATION,
*Respondent.*

(H94-042; CA A88614)

918 P2d 444

Barbara Woodford argued the cause and filed the brief for petitioner.

Michael O. Whitty, Special Assistant Attorney General, argued the cause for respondent. With him on the brief were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

Before Warren, Presiding Judge, and Edmonds and Haselton, Judges.

EDMONDS, J.

## EDMONDS, J.

Petitioner Liberty Northwest Insurance Corporation (Liberty) seeks review of an order by the Director of the Department of Consumer and Business Services (DCBS), ordering it to reimburse respondent SAIF Corporation (SAIF) for medical expenses that SAIF paid to an injured worker (Barnes) pursuant to ORS 656.307 (since amended by Or Laws 1995, ch 332, § 36). We reverse.

In 1984, Barnes suffered a compensable knee injury while working for a restaurant insured by SAIF. SAIF paid that claim. In April 1990, Barnes injured her knee again while working for a restaurant insured by Liberty. As a result, Barnes filed claims with both insurers. Pursuant to ORS 656.307 and OAR 436-60-180, Liberty requested that DCBS[1] designate a paying agent until the issue of responsibility was resolved.[2] Apparently, DCBS believed that Barnes would be undergoing surgery or some other type of treatment that needed hospitalization, because it requested the Workers' Compensation Board's consent to the designation of a paying agent, pursuant to OAR 438-12-032 (since amended January 1, 1995).[3]

---

[1] At the time of Liberty's request, DCBS was known as the Department of Insurance and Finance. It has since been renamed.

[2] ORS 656.307(1) provided, in part:

"(1) Where there is an issue regarding:

"* * * * *

"(c) Responsibility between two or more employers or their insurers involving payment of compensation for two or more accidental injuries;

"* * * * *

"the director shall, by order, designate who shall pay the claim, if the employers and insurers admit that the claim is otherwise compensable[.]"

OAR 436-60-180 provided, in part:

"(7) Upon deciding that the responsibility for an otherwise compensable injury cannot be determined, the insurer shall request designation of a paying agent by applying in writing to the Division. Such a request, or agreement to designation of a paying agent, is not an admission that the injury is compensably related to that insurer's claim; it is solely an assertion that the injury is compensable against a subject Oregon employer."

[3] OAR 438-12-032 required the Board's consent to an order designating a paying agent where one or more of the insurers involved, in this case SAIF, is subject to ORS 656.278 (since amended by Or Laws 1995, ch 332, § 33). ORS 656.278 provided, in part:

On September 13, 1990, the Workers' Compensation Board issued its consent, reciting that "[e]ach of the insurers has provided its written acknowledgment that the only issue is responsibility for claimant's otherwise compensable claim," and concluding that the record "establishes that there has been a worsening of claimant's compensable injury requiring either inpatient or outpatient surgery or other treatment requiring hospitalization." It therefore consented to an order designating a paying agent for temporary disability benefits "commencing the date [Barnes] is hospitalized." The following day, DCBS issued an order designating SAIF as the paying agent, requiring SAIF to pay "any temporary disability due for periods subsequent to any periods of disability already paid by any party *and all unpaid medical expenses incurred as a result of the disputed condition.*" (Emphasis supplied.)

On September 25, 1990, Barnes underwent knee surgery, and SAIF paid the medical expenses associated with the surgery. Sometime later, both insurers became aware that a congenital condition caused the need for the knee surgery. On July 5, 1991, an arbitrator determined pursuant to ORS 656.307 that Liberty rather than SAIF was responsible for the April 1990 injury. Liberty appealed, and the Board reversed and remanded the arbitrator's decision on grounds unrelated to the issues involved in this review. On remand, the arbitrator characterized the issue as "[t]he responsible insurer for claimant's current left knee condition, medical services and disability." On July 28, 1992, the arbitrator issued his decision, ruling that Liberty was responsible for the condition arising from the 1990 injury because Barnes had suffered a new injury. He also upheld SAIF's denial of

---

"(1) Except as provided in subsection (5) of this section, the power and jurisdiction of the board shall be continuing, and it may, upon its own motion, from time to time modify, change or terminate former findings, orders or awards if in its opinion such action is justified in those cases in which:

"(a) There is a worsening of a compensable injury that requires either inpatient or outpatient surgery or other treatment requiring hospitalization. In such cases, the board may authorize the payment of temporary disability compensation from the time the worker is actually hospitalized or undergoes outpatient surgery until the worker's condition becomes medically stationary, as determined by the board[.]"

responsibility for claimant's medical services claim.[4] Liberty appealed the arbitrator's order to the Board.

During the pendency of that appeal, Liberty and Barnes entered into a disputed claim settlement (DCS) that eventually was approved by the Board as part of a claim disposition agreement (CDA). SAIF was not a party to the DCS or the CDA. The settlement included an agreement between Liberty and Barnes that Liberty denied compensability of the surgery and that in settlement of that and other denials, Liberty would pay Barnes $25,000. Liberty then sent a copy of the approved settlement to the Board, which still had Liberty's appeal of the arbitrator's decision under consideration. Liberty argued to the Board that the settlement resolved the issue of responsibility for the expenses of the September 25 surgery. The Board characterized the dispute as whether Barnes suffered a new injury on April 11, 1990, while working for Liberty's insured, or whether her need for medical services was related to her 1984 injury. The Board stated that the DCS pertained only to Barnes' new condition and held that it did not resolve the disputes before it. It then affirmed the decision of the arbitrator:

> "Turning to the merits of Liberty's appeal, our review is limited to questions of law. ORS 656.307(2). Finding no errors of law, we affirm the decision of the Arbitrator."

However, it also ruled:

> "In reaching this conclusion, we note that, on April 19, 1993, we approved Liberty and claimant's Claim Disposition Agreement (CDA), in which claimant released her rights to all workers' compensation benefits, except medical services, for her compensable injury. WCB Case No. C3-00695. Considering our approval of the CDA and the Referee's approval of the parties' DCS, this order regarding the Arbitrator's decision is limited to medical services resulting from the April 11, 1990 'new injury' to claimant's left knee condition *prior to September 25, 1990*." (Emphasis supplied.)

---

[4] In discussing who was responsible for the April 1990 injury, the arbitrator also referred to the September 1990 knee surgery, noting that, although the independent medical examiner "related [Barnes's] current condition to congenital factors, he did not dispute that the April 1990 injury was the major reason that claimant obtained further medical treatment."

On May 27, 1994, the Benefit Consultation Unit of DCBS ordered the final monetary adjustment between the insurers, pursuant to ORS 656.307. It determined that because the DCS only resolved the compensability of treatment received before September 25, 1990, Liberty could not be held responsible for the knee surgery, and therefore, was not required to reimburse SAIF for the medical expenses it paid in conjunction with the surgery. SAIF requested review by the Director of that decision. At the hearing on review, Liberty argued that the Director could not require Liberty to pay expenses for which the Board had determined it was not responsible. The Director disagreed and concluded that the DCS did not bind SAIF in light of the fact that SAIF was not a party to it. It therefore ordered Liberty to reimburse SAIF for the medical expenses that SAIF had paid in conjunction with the September 1990 knee surgery. Liberty seeks review from that order.

■    Liberty contends in part that the Director lacked the authority to disregard the Board's earlier determination regarding responsibility for the September 25 surgical expenses. To answer that contention, we must consider what authority the Director had under ORS 656.307. ORS 656.307(2) and 656.307(3) provide:

"(2)   The director * * * shall request the board to appoint a referee to act as an arbitrator to determine the responsible paying party. * * * The determination of the arbitrator may be reviewed by the board, and then by the Court of Appeals within the same period of time as provided for review of an order after hearing. *Review of the determination of the arbitrator by the board and by the Court of Appeals is limited to questions of law and is not thereafter subject to review by any other court or administrative body.*

"(3)   When a determination of the responsible paying party has been made, the director shall direct any necessary monetary adjustment between the parties involved." (Emphasis supplied.)

■    Under the statute, the arbitrator and the Board determine the issue of responsibility, and the Director allocates payment according to that determination. Had the Board affirmed the arbitrator's upholding of SAIF's denial of

responsibility for the medical services claim without qualification, that would have been tantamount to a determination that as between SAIF and Liberty, Liberty was responsible for the costs of surgery. When the Board qualified the arbitrator's decision to exclude responsibility for the surgical expenses, it left the parties without a determination of the responsible insurer as to those expenses even though it had previously treated them as compensable. The Director's authority under ORS 656.307(3) to direct monetary adjustments is predicated on a determination of responsibility by the Board. Without that determination, the Director was without authority to proceed.

Liberty's other arguments do not require discussion.

Reversed and remanded.